UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN JARVIS JEROME
PHILLIPS,

      Plaintiff,

v.

WASHTENAW COUNTY, *et al.*,

      Defendants.

_____ /

Case No. 26-10038

F. Kay Behm
U.S. District Judge

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED
IN FORMA PAUPERIS (ECF No. 2) AND
<u>DIMISSING PLAINTIFF'S COMPLAINT IN PART (ECF No. 1)</u>**

## I.    PROCEDURAL HISTORY

Plaintiff Justin Phillips filed this action on January 6, 2026, alleging, broadly, some kind of false prosecution against him that arose out of statements by maintenance personnel working on his Mercedes. ECF No. 1.  Plaintiff also filed an application to proceed *in forma pauperis*, which the court finds facially sufficient (despite the controversy arising out of Plaintiff's ownership of a presumably valuable vehicle).  *See* ECF No. 2.  The court thus **GRANTS** Plaintiff's application to proceed *in forma pauperis*.  However, for the reasons set forth below, the court **DISMISSES** portions of Plaintiff's Complaint for

failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e).  One claim survives this court's initial screening, but Plaintiff must identify some or all of the John Doe defendants in order to proceed on that sole remaining count.

## II.    ANALYSIS

When an individual applies to proceed *in forma pauperis*, their claim is subject to the screening standards established in 28 U.S.C. § 1915(e)(2).  *Brown v. Bargery*, 207 F.3d 863, 865-66 (6th Cir. 2000). Congress introduced this subsection with an understanding that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  Under this subsection, a court may dismiss a claim if it: "(i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted, or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

Pursuant to Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The standard "does

not require 'detailed factual allegations' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678.  "Conclusory allegations are not entitled to the assumption of truth." *Washington v. Sodecia Auto.*, No. 25-1362, 2025 LX 434919, at *4 (6th Cir. Oct. 21, 2025).  Additionally, a claim must exhibit "facial plausibility," meaning it includes facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A.    Private-Actor Defendants

Plaintiff makes the following allegations against "private actor" defendants.  Defendant Robert Papa, acting as a licensed repair technician, supplied technical representations that were false, misleading, or materially incomplete.  According to Plaintiff, Papa misrepresented the condition or repair history of Plaintiff's vehicle, Mercedes GL-450, in some way.  Papa's opinion as a licensed repair technician placed him in a unique position of authority regarding the

mechanical condition of the car.  Papa's representations were treated as technically authoritative and were relied upon by other Defendants, including dealership personnel and, later, law enforcement.  ECF No. 1, PageID.4.

Plaintiff's claims against the Michigan Educational Credit Union and its employees are slightly different.  Plaintiff says that law enforcement presented MECU with a subpoena purporting to authorize seizure Plaintiff's financial records, but MECU and its employees "failed to verify lawful process" and disclosed Plaintiff's protected financial information.  *Id.*

Counts I, II, and III all arise under 42 U.S.C. § 1983.  For plaintiffs alleging violation of § 1983, plaintiffs must claim that "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law."  *Simescu v. Emmet County Dept. of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)).  If either element is missing, then plaintiffs' § 1983 claim will not prevail.  *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).  A person is a state actor only if his or her actions are attributable to the

4

state. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). Conduct causing a deprivation is fairly attributable to the state only if (1) it is caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible and (2) the party charged with the deprivation is a person who may fairly be said to be a state actor. *Herring v. City of Ecorse*, No. 24-1916, 2025 WL 2105263, 2025 LX 346903, at \*17 (6th Cir. July 28, 2025). The typical ways that the second prong can be shown is if a) the private entity exercise powers which are traditionally exclusively reserved to the state (the "public function" test), such as running elections or eminent domain, b) the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state (the "state compulsion" test), or c) there is a sufficiently close relationship (*i.e.* through state regulation or contract) between the state and the private actor so that the action may be attributed to the state (the "nexus" test). *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) (citing *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (further citations omitted)).

There are no allegations that are sufficiently detailed to establish that any of the private defendants may fairly be considered a state actor. All of the private actors in this case associated with Mercedes-Benz at most allegedly provided false information to police. *See* ECF No. 1, PageID.4. But that is not sufficient to show that these actors were acting on behalf of the state when they made those representations to state actors. *See Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'"); *cf. Rothstein v. Carriere*, 373 F.3d 275, 293-94 (2d Cir. 2004) ("Simply reporting a crime to law enforcement and giving testimony does not constitute the "initiation" of a criminal prosecution."). The claims against the Michigan Educational Credit Union and its employees fail because taking action to comply with a subpoena does not transform the entity (or employees) into state actors, or their activity into state action. *See Gold v. City of Sandusky*, No. 3:15 CV 2001, 2018 WL 1468992, 2018 U.S. Dist. LEXIS 49567, at *23 (N.D. Ohio Mar. 26, 2018) ("Responding to the subpoena did not

transform the medical provider Defendants into state actors.").  All claims under 42 U.S.C. § 1983 and § 1985 against Michigan Educational Credit Union, Lisa Kania, Henry (Hank) Wilson, Amanda Duff, Robert Sandercock, Mercedes-Benz of Ann Arbor, Ann Arbor-5, William Bryan Dandurand, Jelani Evans, Mathew Davis, Shawn E. Durham, Robert Papa, Lithia Motors, David Fischer, and The Suburban Collection Group, are therefore dismissed for failure to state a claim.

Those being all federal claims against these defendants, the court declines to exercise supplemental jurisdiction over any state law claims as to them.  *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008).  Because those are the only state law claims in this case, Count V (for all state law claims) is dismissed in full without prejudice, and as a result each of the "private actor" defendants are dismissed entirely from this case.

### B.    Individual Municipal Defendants

Plaintiff next brings claims against particular defendants associated with Washtenaw County.  The court takes these in two parts. First, the court addresses the individual defendants.  Although Plaintiff does not say whether he sues them in their official or individual

capacities, the inclusion of these lists of individuals alongside claims against municipal entities suggests he intended individual capacity claims.

*John/Jane Doe Sheriff's Deputies 1-10.* Plaintiff says ten deputies "participated in the investigation, evidence gathering, and use of unlawful process." Elsewhere, he alleges "the evidence was fabricated or unlawfully obtained." ECF No. 1, PageID.5. This evidence was given to the deputies, according to Plaintiff, by certain individuals who worked on his Mercedes at the dealership, and the deputies were aware of its fabrication. *See id.* at PageID.3. Plaintiff also says that deputies presented a false subpoena to obtain his financial records at MECU. *Id.* at PageID.4.

*John/Jane Doe Prosecutors 1-5.* Plaintiff says five unidentified prosecutors "participated in investigative or administrative acts, including review, use, or ratification of unlawful subpoenas." Likewise, elsewhere Plaintiff alleges "Defendants continued the prosecution despite knowing the evidence was fabricated or unlawfully obtained." ECF No. 1, PageID.5. And he says the prosecution was initiated "without probable cause." *Id.* Plaintiff does not describe the

prosecution or charged crime in any detail, but says it was "terminated in Plaintiff's favor on July 31, 2023." *Id.* at PageID.2.

Plaintiff specifically alleges Malicious Prosecution (§ 1983), Fabrication of Evidence (§ 1983), and Civil Conspiracy (§ 1983 and § 1985).

### 1.   *Malicious Prosecution (Count I)*

A claim of malicious prosecution premised on a Fourth Amendment violation requires a showing of the following elements: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Jones v. Clark Cnty.*, 959 F.3d 748, 756 (6th Cir. 2020) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)).

As to the sheriff's deputies, the Sixth Circuit has held that a police officer cannot be held liable for malicious prosecution when he did not make or influence the decision to prosecute. *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002) (officer "cannot be held liable for

malicious prosecution when he did not make the decision to prosecute . . . .”); *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (“*Skousen*, in which the plaintiff alleged that a police officer had falsely accused her, clearly forecloses a malicious prosecution claim based solely on officers’ turning over evidence to the prosecuting authorities”). True, if the deputies “conspired with [or] influenced” the decision to bring charges, that can be enough to survive a motion to dismiss. *See McKinley*, 404 F.3d at 444. But at this stage, Plaintiff’s allegations against the deputies are insufficient to state a claim for malicious prosecution; his complaint sounds in the claim that these officers turned over allegedly fabricated evidence to prosecutors, who made the decision to prosecute. While Plaintiff in conclusory fashion alleges that deputies conspired with prosecutors to charge him, he does not set out any specific factual allegations from which the court could reasonably conclude that the deputies were actually involved in the prosecuting decision or influenced it in a meaningful way.[1] So Count I must be dismissed against the deputy defendants.

---

[1] The allegedly falsified subpoena might give rise to some other claim, but it is not a malicious prosecution claim and was not pled.

Plaintiff's allegations against are also not sufficient to state a claim against the prosecuting attorneys. Claims against prosecutors are generally barred by prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) ("[A] prosecutor enjoys absolute immunity from [§] 1983 suits for damages when he acts within the scope of his prosecutorial duties."); *Brown v. Mich. State Trooper Logan Dushan*, No. 25-1260, 2025 LX 483188, at *4 (6th Cir. Oct. 9, 2025). Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021) (applies even when presenting false testimony); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003). Generally, affirmative defenses should be considered after a defendant responds, but if the affirmative defense is clear from the face of the complaint, a

11

court may dismiss under Rule 12(b)(6) instead – and immunity from monetary relief is also a reason to screen out a case under the PLRA screening provisions. *See* 28 U.S.C. § 1915(e)(2); *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Plaintiff's allegations against Defendants generally focus on the prosecutors' role as advocate (Defendants "initiated and continued a prosecution"). That entitles the prosecutor defendants to absolute immunity. However, Plaintiff also says they "engaged in investigative and administrative acts outside protected prosecutorial advocacy," which raises the question of the application of qualified immunity rather than absolute immunity, and may be a factual matter in need of development. *See Holmes v. Marion Cty. Sheriff's Office*, 141 F.4th 818, 823 (7th Cir. 2025) ("Immunity—particularly prosecutorial and qualified immunity—is often a contestable issue that requires the court to conduct involved legal analysis" that may be improper in a screening analysis). Here, however, the court does not find there to be a question in need of factual development. Plaintiff's allegations that prosecutors engaged in unprotected acts are too conclusory to require further review; he does not identify or allege any particular act that they

engaged in outside their role as advocate. While "fabrication of false evidence" during the investigative stage would only be entitled to qualified immunity and not absolute immunity, Plaintiff sets out no specific facts that would establish any prosecutor's involvement prior to the commencement of formal judicial proceedings. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993). And absolute immunity exists even when it is alleged that a prosecutor knowingly presented false evidence against the plaintiff at trial. *See id.* at 272–73. These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The John/Jane Doe prosecutor defendants are all entitled to absolute immunity on the face of the complaint, and Count I must be dismissed against them as well.

### 2. *Fabrication of evidence (Count II)*

A fabrication-of-evidence claim under § 1983 is an allegation that a defendant knowingly fabricated evidence against a plaintiff, and that there is a reasonable likelihood that the false evidence could have affected the judgment of the jury. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citations omitted). Unlike a malicious prosecution

13

claim, "[a] claim of fabrication of evidence does not require a conclusion that the state did not have probable cause to prosecute the claimant." *Jacobs v. Alam*, 915 F.3d 1028, 1042 (6th Cir. 2019) (quoting citation omitted). Although the claim generally refers to a defendant who themselves "fabricates" the evidence, it appears that it can be enough that the defendant is "aware" that the evidence was fabricated and is uses that evidence against the plaintiff nonetheless. *See Hollis v. Bullard*, No. 10-10729, 2011 WL 5184228, 2011 U.S. Dist. LEXIS 126000, at *16 (E.D. Mich. Nov. 1, 2011); *Richardson v. Nasser*, No. 08-12951, 2009 WL 4730446, 2009 U.S. Dist. LEXIS 114641, at *16 (E.D. Mich. Dec. 9, 2009).

At this initial stage, Plaintiff has sufficiently alleged that deputies and prosecutors fabricated evidence or knew that evidence against him was fabricated but assisted in his prosecution based on that evidence. However, for the same reasons explained above, Plaintiff's conclusory allegations do not suffice to show that the prosecutors' conduct occurred in an administrative or investigative capacity rather than in their role as advocate in the judicial process. The prosecutors are again, therefore, entitled to absolute prosecutorial immunity. While Plaintiff's

allegations as to the deputies are also somewhat conclusory (what evidence, specifically, did the deputies fabricate?), at this stage the court finds that Plaintiff's allegations are sufficient to set out the elements of the claim and withstand initial screening.

### 3. Civil Conspiracy (Count III)

Plaintiff finally brings a claim of civil conspiracy under both 42 U.S.C. § 1983 and § 1985. A civil conspiracy claim under § 1983 "requires (1) a single plan existed, (2) that defendants shared in a general conspiratorial objective to deprive plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to plaintiffs." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 767-68 (6th Cir. 2020) (citations and quotations omitted). "[A] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014). Plaintiff states in fairly conclusory fashion that "Defendants agreed and acted in concert to violate Plaintiff's constitutional rights." ECF No. 1, PageID.6. He says "Defendant Robert Papa fabricated or materially misrepresented technical facts regarding the Mercedes GL-450, which

were incorporated into law-enforcement reports and relied upon to establish probable cause where none existed." *Id.* This is sufficient to allege that private actors supplied false information, which was knowingly taken up by police, and knowingly used by prosecutors in turn. The court is not convinced, however, that this is the same as saying that these groups had a "single plan" to violate Plaintiff's constitutional rights. There is no allegation suggesting any of these individuals worked together at any stage. There is no allegation that any members of these distinct groups (the private actor defendants, the sheriff's deputies, the prosecutors) ever agreed to work in concert. There is no allegation, even as to the sheriff's deputies specifically, showing that multiple individual, identifiable deputies worked in concert and agreed to do so. Plaintiff's claims sound in the idea that deputies and prosecutors proceeded on information they knew was flimsy or false, where the originator of that information knew it was false – but that is not quite the same as Defendants having a "joint" plan to deprive Plaintiff of his rights. Even liberally construed, these allegations are just too conclusory and do not set out any specific facts showing a joint enterprise to deprive Plaintiff of his rights.

A § 1985(3) civil conspiracy claim requires a plaintiff to show "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)).  The plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race.  *Johnson*, 40 F.3d at 839.  There are, however, no allegations of any kind of class-based animus behind either the malicious prosecution or fabrication of evidence claims.

Plaintiff's civil conspiracy claims under both § 1983 and § 1985 against the individual municipal defendants are therefore dismissed for failure to state a claim.

## C.   *Monell* Liability

Plaintiff's claims against Washtenaw County, Washtenaw County Sheriff's Department, Washtenaw County Prosecutor's Office, as well as all claims against the individual municipal defendants in their official

17

capacities, are properly considered one singular claim against a municipal entity ("*Monell*" liability).  A claim against officials in their official capacities is effectively a claim against the municipality itself. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).  The court notes, given that no individual defendant is identified by name, it is proper to consider possible constitutional violations committed by a municipality even in the absence of a showing of a constitutional violation by any one individual officer.  *Grote v. Kenton Cty.*, 85 F.4th 397, 414 (6th Cir. 2023).

Plaintiff's claims against Washtenaw County (or its sub-entities) are as follows:

> 10. Defendant Washtenaw County is a municipal entity responsible for the policies, customs, and practices of its Sheriff's Department and Prosecutor's Office.
>
> 11. Defendant Washtenaw County Sheriff's Department acted under color of state law through its deputies.
>
> 12. Defendant Washtenaw County Prosecutor's Office engaged in investigative and administrative acts outside protected prosecutorial advocacy.
>
> 45. The violations resulted from policies, customs, failures to train, and ratification.

ECF No. 1, PageID.3, 6.

To hold a municipality liable, it is not enough to show that a municipal employee violated someone's rights; there is no respondeat superior municipal liability under § 1983. *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff makes no non-conclusory allegations that Washtenaw County, or sub-entity thereof, has a custom, policy, or practice of engaging in the kind of acts he alleges here. At most, he says that Washtenaw County is "responsible" for the customs and practices of its sub-entities, and that there were "policies, customs, failures to train, and ratification." But in these conclusory statements, he alleges no specific custom, policy, or practice, nor any particular act of ratification. Plaintiff's claims, as alleged, are about a specific investigation and prosecution that in his view lacked probable cause due to fabricated evidence, but absent any factual allegations regarding broader policy, custom, practice, or act of ratification, sound in the sort of respondeat superior liability that is disallowed under *Monell*. Therefore, all claims against Washtenaw County, Washtenaw County Sheriff's Department, Washtenaw County Prosecutor's Office, and any

claims brought against the individual defendants in their official capacities, are all dismissed for failure to state a claim.  This accordingly disposes of Count IV in its entirety.  This also resolves any possible remaining claims under Counts I and III, as no defendants remain under that count.

### D.    John Doe Defendants

Thus, what remains are portions of Count II, but only against John/Jane Doe sheriff's deputies; all other defendants are dismissed pursuant to the above.  However, the Clerk's office does not generally issue summonses to John Doe defendants whose identities are unknown.  While the court is "generally responsible for serving defendants in actions brought by *in forma pauperis* ("IFP") plaintiffs, the court cannot issue summons for, or serve, a defendant that has not been named by the IFP plaintiff." *Ewing v. Wayne Cty. Sheriff*, No. 2:22-cv-11453, 2023 WL 8246196, 2023 LX 77143, at *3 (E.D. Mich. Oct. 12, 2023).  Until the defendants are identified, the court cannot order service of the summons and complaint on any remaining defendant.  Thus, Plaintiff shall have 30 days to amend his complaint and identify these John/Jane Doe defendants (or,

in the alternative, identify at least one John/Jane Doe defendant).

Failure to do so will result in dismissal of this case for failure to

prosecute.  Plaintiff is <u>not</u> granted leave to amend to remedy any

deficiencies identified in this order as to any defendants or count except

as to the remaining deputy defendants and Count II.

## III.  CONCLUSION

In sum: Plaintiff's Complaint is dismissed in part because portions

of his complaint fail to state a claim on which relief could be granted.

While the Plaintiff's application to proceed *in forma pauperis* is

**GRANTED**, the following portions of Plaintiff's Complaint are

**DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a

claim upon which relief can be granted: Count I, Count II (against all

Defendants except John/Jane Doe Sheriff's Deputies 1-10), Count III,

and Count IV.  Count V is **DISMISSED** without prejudice for lack of

jurisdiction, and the court accordingly does not opine on the merits of

those claims.

As a result, Defendants Washtenaw County, Washtenaw County

Sheriff's Department, Washtenaw County Prosecutor's Office,

John/Jane Doe Prosecutors 1-5, Michigan Educational Credit Union,

Lisa Kania, Henry (Hank) Wilson, Amanda Duff, Robert Sandercock, Mercedes-Benz of Ann Arbor, Ann Arbor-5, William Bryan Dandurand, Jelani Evans, Mathew Davis, Shawn E. Durham, Robert Papa, Lithia Motors, David Fischer, and The Suburban Collection Group, are all dismissed from this case.

This is not a final order and does not close the case.  Plaintiff has 30 days from entry of this order to amend his complaint to identify at least some of the remaining John/Jane Doe Defendants to permit service of process; failure to identify any remaining defendant will result in dismissal of this case without prejudice for failure to prosecute.

**SO ORDERED**.

Date: February 4, 2026          s/ F. Kay Behm
                                F. Kay Behm
                                United States District Judge